# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

DONALD DAWSON-DURGAN[1],　　　　　:

　　　　　　　　Petitioner,　　　　　　　Case No. 1:19-cv-382

　- vs -　　　　　　　　　　　　　　District Judge Matthew W. McFarland
　　　　　　　　　　　　　　　　　Magistrate Judge Michael R. Merz
TIM SHOOP, Warden,
　Chillicothe Correctional Institution,

　　　　　　　　Respondent.　　　　　:

# REPORT AND RECOMMENDATION

　　　This habeas corpus case, brought *pro se* by Petitioner Donald Dawson-Durgan under 28 U.S.C. §2254, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF Nos. 10, 27), the Return of Writ (ECF No. 29) and Petitioner's Traverse (ECF No. 41). Petitioner seeks relief from his conviction in the Court of Common Pleas of Hamilton County on charges of aggravated murder, aggravated robbery, and having weapons while under disability.

**Litigation History**

　　　On May 19, 2016[2], the Hamilton County Grand Jury indicted Dawson-Durgan on two counts of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) and (B), aggravated robbery in

---

[1] This is the spelling Petitioner gives his name in the Petition. At various points in the record his name is given without the hyphen and either "Dawson" or "Durgan" is treated as his last name. The Magistrate Judge has attempted to respect Petitioner's choice in this regard except when quoting another author.
[2] The Return gives this date as May 19, 2015, but that is plainly a typographical error.

1

violation of Ohio Rev. Code § 2911.01(A)(1), all with firearm and repeat violent offender specifications, and having weapons while under a disability in violation of Ohio Rev. Code § 2923.13(A)(2). (Indictment, State Court Record, ECF No. 10, Exhibit 1).

Dawson-Durgan waived trial by jury on the having weapons under disability charge and was convicted. A jury found him guilty of the lesser included offense of murder on count 1, aggravated murder on count 2, guilty of aggravated robbery, and of all of the attached firearm specifications. (Verdicts, ECF No. 10, Exhibit 8). At the request of the State, the court dismissed all of the repeat violent offender specifications. (Entry, ECF No. 10, Exhibit 9). Merging the murder and aggravated murder convictions, the trial court sentenced Dawson-Durgan to life in prison without parole on those charges, eleven years in prison for aggravated robbery, and twelve months in prison for having weapons under disability, all to be served concurrently. Merging the firearms specifications, the court also imposed a mandatory and consecutive three years in prison. (Entry, State Court Record, ECF No. 10, Exhibit 10).

Represented by new counsel, Petitioner appealed to the Ohio Court of Appeals for the First District, raising the following assignments of error:

> 1. The court erred when it overruled the defense's motion to suppress defendant's statements.

> 2. The court erred to the prejudice of the appellant by not finding purposeful discrimination by the State against African-Americans during voir dire, and thus violated appellant's rights to due process and equal protection.

> 3. The trial court erred to the prejudice of the defendant-appellant as there was insufficient evidence to convict.

> 4. The trial court erred to the prejudice of the defendant-appellant because the verdict was against the manifest weight of the evidence.

> 5. The defendant was denied effective assistance of trial counsel, as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments.

2

(Appellant's Brief, State Court Record, ECF No. 10, Ex. 12). The First District affirmed the conviction. *State v. Durgan*, 2018-Ohio-2310 (Ohio App. 1st Dist. Jun. 15, 2018). Raising the same claims as proposed propositions of law, Petitioner appealed *pro se* to the Supreme Court of Ohio which declined to accept jurisdiction. *State v. Durgan,* 153 Ohio St. 3d 1496 (2018). Petitioner sought unsuccessfully to reopen his direct appeal on claims of ineffective assistance of appellate counsel (Application under Ohio R. App. P. 26(B), State Court Record, ECF No. 10, Ex. 18; Entry, *Id.* at Ex. 21; appellate jurisdiction declined, *Id.* at Ex. 24).

On December 7, 2018, Petitioner filed a Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 (Petition, ECF No. 10, Ex. 27), which the trial court summarily denied. *Id.* at Ex. 28. The First District affirmed for lack of jurisdiction based on untimeliness. *State v. Dawson-Durgan*, 2020 Ohio App. LEXIS 1055 1st Dist. Mar. 25, 2020)[3]. Petitioner did not timely appeal, but later filed an unsuccessful mandamus action to compel the Clerk of the Supreme Court of Ohio to accept his motion for delayed appeal.

Petitioner filed his Petition for Writ of Habeas Corpus in this Court on May 18, 2019, by depositing it in the prison mail system. He pleads the following grounds for relief:

> **Ground One**: The court erred when it overruled the defense's motion to suppress defendant's statements.
>
> **Supporting Facts:** Defendant's constitutional rights were violated when during custodial interrogation by police when his rights were not appraised [sic] by those officers in accordance with his constitutional protections.

---

[3] Petitioner complains "The appeals courts in error converted the trial court's ruling into an entry to dismiss stating that Petitioner did not meet the requirements of Ohio Revised Code§ 2953.23 for the exception." On the contrary, the first obligation of any court is to determine whether it has jurisdiction or, if an appellate court, whether the lower court had jurisdiction. Because the statute of limitations in Ohio Revised Code § 2953.21 is a jurisdictional bar, the trial court did not have jurisdiction to consider the merits of the petition, but its summary order could have been read as a decision on the merits.

**Ground Two**: The defendant was denied effective assistance of trial counsel as guaranteed by Section 10, Article I of the Ohio Constitution and the 6th and 14th Amendments.

**Supporting Facts:** Counsel failed to present false confession evidence when it was crucial to the defense's theory.

**Ground Three**: The trial court erred to the prejudice of the defendant as there was insufficient evidence to convict. And the verdict was against the manifest weight of the evidence.
**Supporting Facts:** Evidence showed defendant did not commit the offenses and his convictions were not supported by the weight of the evidence.

**Ground Four**: There was insufficient evidence to sustain a conviction for weapons under disability.

**Supporting Facts:** No evidence was presented the defendant possessed or had under his control a firearm.

**Ground Five**: The judgment entry does not reflect the proper manner of conviction related to any of the courts.

**Supporting Facts:** The entry of judgment does not comport to the record.

**Ground Six**: The defendant Donald Dawson Durgan's rights to due process of law and an impartial jury, as well as a fair trial pursuant to the 6th and 14th Amendments were violated because he was seen multiple times by the jury in handcuffs and being transported in the company of deputy sheriffs.

**Supporting Facts:** The defendant was prejudiced by being witnessed by jury member who reacted negatively to seeing him handcuffed.

**Ground Seven**: Defendant's counsel was ineffective for waiving his presence during a critical stage of the proceedings causing a manifest miscarriage of justice and violating his right to trial. [sic].

(Petition, ECF No. 1, Page ID 6-17). The case was stayed to allow exhaustion of state court remedies on Grounds Six and Seven (ECF Nos. 18, 20, 21, 22). The case is now ripe for decision.

4

# Analysis

## Ground One:  Denial of Motion to Suppress

In his First Ground for Relief, Petitioner asserts the trial court erred when it failed to suppress his statements to the police.   This claim was presented to the First District Court of Appeals which decided the claim as follows:

> [*P12]  In his first assignment of error, Durgan argues that the trial court erred in overruling his motion to suppress his statements to the police. He argues that the first two times he talked to the police, he was not informed of his rights in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He further argues that the third time he talked to police his statements were not made voluntarily. This assignment of error is not well taken.
>
> ### A. No Custodial Interrogation
>
> [*P13]  Police officers must advise a person of his or her *Miranda* rights when that person is subject to custodial interrogation. *State v. Tucker*, 81 Ohio St.3d 431, 435-436, 1998-Ohio-438, 692 N.E.2d 171 (1998); *State v. Bell,* 2015-Ohio-1711, 34 N.E.3d 405, ¶ 31 (1st Dist.). Whether a suspect is in custody is an objective inquiry. *J.D.B. v. North Carolina*, 564 U.S. 261, 270, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011); *Bell* at ¶ 31.
>
> [*P14]  This determination requires two "discrete inquiries": (1) what were the circumstances surrounding the interrogation, and (2) given those circumstances, would a reasonable person have felt that he was at liberty to terminate the interrogation and leave. *J.D.B.* at 270; *Bell* at ¶ 32. "Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *J.D.B.* at 270, quoting *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).
>
> [*P15]  The first time police interviewed Durgan was on May 4, 2016, the day of the murder. Durgan was already at the scene when

the police arrived. He appeared eager to help and volunteered that the victim had been receiving threatening text messages. Durgan agreed to accompany police back to the police station to be interviewed. Because his truck was part of the crime scene, he could not drive it so police offered to drive him. He was considered a witness, and he was not handcuffed. He points out that a neighbor drove the victim's wife to the police station and that she was not in a police cruiser. But no neighbor offered to drive Durgan, so a police detective drove him. Though he was sitting in a marked cruiser writing a witness statement when detectives first arrived, he was transported in an unmarked car. The only restraint involved was a seat belt. Because Durgan was hungry and diabetic, the detective took him to a restaurant drive-through.

[*P16]  At police headquarters, Durgan voluntarily provided more details about his attempts to meet with Singh that morning and his concern when Singh did not appear as planned. Durgan gave police his phone number so police could check his phone records. At the end of the interview, Durgan was allowed to leave and the police gave him a ride back to the crime scene to get his truck. Thus, the record shows that there was no restraint to the degree of a formal arrest, and a reasonable person in Durgan's position would have felt free to leave. Therefore, he was not in custody, and no *Miranda* warnings were required.

[*P17]  The police interviewed Durgan again on May 10, 2016. After reviewing Singh's and Durgan's phone records, the police decided that they needed to conduct a follow-up interview with Durgan. They called him and asked him to come to police headquarters, which he did voluntarily. He drove himself there, and he was not handcuffed or searched. Police were seeking to obtain any additional information that he may have left out or forgotten at the previous interview. The interview was not lengthy, and afterward, Durgan was allowed to leave.

[*P18]  Police did have some concerns about Durgan. They obtained a search warrant to install a GPS device on his car so that they could locate him if needed. One of the reasons for the follow-up interview was to accomplish that task. Nevertheless, Durgan did not know about the GPS, so it could not have affected his behavior.

[*P19]  Once again, the record shows that there was no restraint to the degree of a formal arrest, and a reasonable person in Durgan's position would have felt free to leave. Police need not give Miranda warnings to every person they question, even if the police suspect that person of being involved in a crime. *Oregon v. Mathiason,* 429

U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. Lynch,* 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 47. Consequently, the police were not required to advise Durgan of his *Miranda* rights at the May 10 interview.

## B. Waiver of *Miranda* Rights/Voluntariness

 [*P20]  The situation had changed by May 13, 2016. Durgan was considered a suspect and was under arrest when he arrived at police headquarters. The police advised him of his *Miranda* rights and questioned him extensively. Durgan argues that his statements to the police were involuntary and that his will was overborne.

 [*P21]  This argument involves two distinct issues: (1) whether Durgan knowingly, intelligently and voluntarily waived his *Miranda* rights; and (2) whether he made his statement to the police voluntarily under the Due Process Clause of the United States Constitution. We analyze both issues using a totality-of-the circumstances test. *State v. Eley,* 77 Ohio St.3d 174, 178, 1996-Ohio-323, 672 N.E.2d 640 (1996); *State v. Burton,* 1st Dist. Hamilton No. C-080173, 2009-Ohio-871, ¶ 9.

 [*P22]  Under the *Miranda* analysis, the state bears the burden to prove by a preponderance of the evidence that the accused made a knowing, voluntary, and intelligent waiver of his *Miranda* rights. Courts will not presume a waiver just because the accused responded to the interrogation. *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976); *Burton* at ¶ 10.

 [*P23]  A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne or that his capacity for self-determination was critically impaired because of coercive police misconduct. *State v. Dailey,* 53 Ohio St.3d 88, 559 N.E.2d 459 (1990), paragraph two of the syllabus; *Burton* at ¶ 11. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Dailey* at 91, quoting *Moran v. Burbine,* 475 U.S. 412, 422-423, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

 [*P24]  Under the due-process analysis, the prosecution must prove by a preponderance of the evidence that a confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618

(1972); *Burton*, 1st Dist. Hamilton No. C-080713, 2009-Ohio-871, at ¶ 12.

> In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.

*Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051, at paragraph two of the syllabus. Coercive police activity is necessary to a finding that a confession was involuntary within the meaning of the Due Process Clause. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *State v. Combs*, 62 Ohio St.3d 278, 285, 581 N.E.2d 1071 (1991); *Burton* at ¶ 12.

 [*P25]  Durgan contends that he initially denied any involvement in the crime, but finally confessed after six hours of intensive interrogation. The record does reflect that the interrogation was lengthy, but it also shows that he was fed twice and given breaks to use the restroom. He was read his rights, and indicated that he understood them. He never stated that he did not wish to talk to the police, that he wanted to leave, or that he wanted to talk to a lawyer. He continued to talk about the murder for quite some time.

 [*P26]  Durgan cites to testimony at the trial, claiming that his statements were involuntary due to the police's use of an allegedly coercive police technique called the "Reid Method." While there was testimony about that technique at trial, the issue was not raised at the hearing on the motion to suppress.  This court may only consider evidence presented at the suppression hearing. *State v. Tapke*, 1st Dist. Hamilton No. C-060494, 2007-Ohio-5124, ¶ 47.

 [*P27]  Durgan continued to deny having any knowledge about the murder, although his story changed a number of times. He eventually stated that he owed drug dealers a lot of money and had substantial gambling debts. He stated that he had set up a robbery of the victim, and that an unnamed drug dealer had appeared and shot the victim. He never confessed to shooting the victim himself, thus undercutting his claim that his will was overborne.

 [*P28]  In sum, the totality of the circumstances shows that Durgan's statements to the police were voluntary and that he voluntarily waived his Miranda rights. Therefore, the trial court did

> not err in overruling his motion to suppress his statements to the
> police, and we overrule Dawson-Durgan's first assignment of error.

*State v. Durgan, supra*.

Petitioner's first assignment of error squarely raised a federal constitutional claim and the First District decided it on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Factual findings by the state courts are presumed to be correct; the presumption can be overcome only by clear and convincing evidence in the state court record. 28 U.S.C. § 2254(e); *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Petitioner's argument in his Traverse makes clear he is challenging admission of statements from all three May, 2016, interviews he had with the police. As to the May 4 and May 10 statements, the State concedes Petitioner was not given *Miranda* warnings, but avers he was not in custody. As to the May 13, 2016, interview, the State concedes Dawson-Durgan was in custody, but avers that the *Miranda* warnings were given, and he continued to speak with the police for many hours about the murder.

**The May 4, 2016, Interview**

According to the First District Court of Appeals, when police arrived at the scene of Mr. Singh's murder, Singh's spouse and Dawson-Durgan were already there.  *State v. Dawson, supra,* ¶ 15.  Dawson-Durgan volunteered information about the murder and agreed to accompany the police back to the police station to be interviewed. *Id.* He was not handcuffed and the only restraint on him was a seat belt, which is of course required by law.  *Id.*  He was transported in an unmarked police vehicle because his own truck was a part of the crime scene and no one else had offered to drive him, in contrast to Singh's spouse, who was offered a ride by a neighbor.  *Id.*

The only difference between the First District's description of these events and Dawson-Durgan's is that he claims he was locked into the police vehicle (Traverse, ECF No. 41, PageID 3018, citing Trial Transcript, ECF No. 27-3).  Dawson did not testify at the suppression hearing and there is no testimony from anyone else to show that he was locked in.  He claims he was in custody, but provides no reference to testimony that contradicts Detective Pfaffl's description of what happened, to wit, that he was treated as a witness like Mrs. Singh, that he agreed to go to the police station so that his interview could be recorded, and that he was accompanied into the police station by an officer, just as she was.  In sum, Dawson-Durgan offers no evidence to contradict the First District's findings, much less to overcome them by clear and convincing evidence.

The question of whether a person is in custody for *Miranda* purposes is a mixed question of law and fact *Thompson v. Keohane*, 516 U.S. 99 (1995); *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998).  That is to say, once the historical facts have been determined, the question of whether an interrogation was custodial requires application of the law to those facts.

The facts as found by the First District as to the May 4, 2016, interview do not amount to

a custodial interrogation. Not every interview that takes place in a police station is custodial.

> The *Miranda* Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444. A suspect is "in custody" for purposes of receiving *Miranda* protection if there has been a "formal arrest or restraint on freedom of movement." *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California,* 511 U.S. 318, 323 (1994) (per curiam). *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Mathiason,* 429 U.S. at 495). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984).

*Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003). Dawson-Durgan began talking to the police as soon as they arrived on the scene of the murder; continuation of the interview at a place where it could be recorded was a reasonable request to which Dawson-Durgan acceded. In fact there is no testimony that he was treated any differently from Mrs. Singh.

The First District's conclusion that the May 4, 2016, interview was not custodial is based on a reasonable reading of the testimony and a reasonable application of the law and is therefore entitled to deference under 28 U.S.C. § 2254(d).

**The May 10, 2016, Interview**

Regarding the May 10, 2016, interview, the First District found:

11

[*P17] The police interviewed Durgan again on May 10, 2016. After reviewing Singh's and Durgan's phone records, the police decided that they needed to conduct a follow-up interview with Durgan. They called him and asked him to come to police headquarters, which he did voluntarily. He drove himself there, and he was not handcuffed or searched. Police were seeking to obtain any additional information that he may have left out or forgotten at the previous interview. The interview was not lengthy, and afterward, Durgan was allowed to leave.

[*P18] Police did have some concerns about Durgan. They obtained a search warrant to install a GPS device on his car so that they could locate him if needed. One of the reasons for the follow-up interview was to accomplish that task. Nevertheless, Durgan did not know about the GPS, so it could not have affected his behavior.

[*P19] Once again, the record shows that there was no restraint to the degree of a formal arrest, and a reasonable person in Durgan's position would have felt free to leave. Police need not give *Miranda* warnings to every person they question, even if the police suspect that person of being involved in a crime. *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. Lynch,* 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 47. Consequently, the police were not required to advise Durgan of his *Miranda* rights at the May 10 interview.

*State v. Dawson, supra.*

With respect to the historical facts, Dawson-Durgan has the same burden as with the May 4 interview: to overcome state court findings by clear and convincing with evidence in the state court record. Dawson-Durgan points to no evidence to contradict the finding that the police called him and asked him to come in, rather than coming to find him. He claims he did not want to come in because it was his busy day, but he does not deny he responded to their request without being arrested. He notes he was in an interview room with two detectives and the door was closed, but that also does not amount to being in custody.

Dawson-Durgan complains that the police placed a GPS tracking unit on his car without telling him about it, but they were authorized to do so by a warrant issued by an independent state

12

court judge.  As the First District notes, he cannot have felt compelled to answer questions by the presence of the GPS unit because he did not know about it.

In sum, the May 10, 2016, interview was even less custodial than the May 4 interview. Therefore the First District's conclusion that no *Miranda* warnings were necessary is entitled to deference under 28 U.S.C. § 2254(d).

**The May 13, 2016, Interview**

The legal context of the May 13, 2016, interview was quite different.  By this time the police had decided that Dawson-Durgan was a suspect and they gave him full *Miranda* warnings. The question of whether his waiver of rights thereafter was voluntary is determined from the totality of the circumstances which include "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Dawson, supra*, at ¶ 24, citing *State v. Edwards*, 49 Ohio St.2d 31, 38 (1976).  A finding of coercive police activity is necessary to a finding that a confession was involuntary within the meaning of the Due Process Clause. *Id.*., citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

The First District's findings about the May 13th interview are:

> [*P25]  Durgan contends that he initially denied any involvement in the crime, but finally confessed after six hours of intensive interrogation. The record does reflect that the interrogation was lengthy, but it also shows that he was fed twice and given breaks to use the restroom. He was read his rights, and indicated that he understood them. He never stated that he did not wish to talk to the police, that he wanted to leave, or that he wanted to talk to a lawyer. He continued to talk about the murder for quite some time.

*State v. Dawson, supra.*

Dawson-Durgan claims that when he was arrested, he asked for an attorney (Traverse, ECF No. 41, PageID 3021). However, he offers no reference to any testimony supporting this claim. He claims that he tried to stop the interview and request an attorney, but the transcript to which he cites shows he tried to interrupt the interview to call the mother of his son to let the son go to the hospital for some surgery (ECF No. 28-3, PageID 2506, et. seq.). Petitioner's argument in the Traverse is:

> It is conveniently cut off. He stated "Can I call my son's mother and tell her I need a lawyer" The Detective surprised stated: What's that? Petitioner intimidated [sic] that that he wanted to call his son's mother to tell her to let him go to the hospital. Afraid he continues with the story. You can review the transcripts and see that he was intimidated by the Detective's as his second question does not make sense. "Can call my son's mother, tell her? he admitted -- to let him go to the hospital."

(Traverse, ECF No. 41, PageID 3022). It is not clear from the context that this interruption had anything to do with requesting an attorney. The conversation goes on to identify the hospital involved and says nothing about an attorney.

A request for counsel must be clear and unequivocal. *Davis v. United States*, 512 U.S. 452, 459-62 (1994). Law enforcement officers need not "cease questioning an individual immediately upon [his] making of an ambiguous or equivocal reference to an attorney." *McKinney v. Hoffner,* 830 F.3d 363, 373 (6th Cir. 2016) (quoting *Davis*, 512 U.S. at 459). Here there was no reference to an attorney at all.

The record shows that the officers advised Dawson-Durgan of his *Miranda* rights and he thereafter signed the Advice of Rights form, acknowledging that he understood his rights and was waiving them (Tr.Tr., ECF No. 27-3, PageID 577-78).

To reiterate the relevant legal standard, to overcome the presumption of correctness which

14

attaches to the First District's findings, Petitioner must show they are erroneous by clear and convincing evidence in the state court record. Petitioner did not testify at the motion to suppress hearing. The transcript of the May 13, 2016, interview which is now a part of the record was admitted in evidence at the suppression hearing as State's Exhibit 4A without any objection by defense counsel that it was inaccurate, or any other objection for that matter (Tr. Tr., State Court Record, ECF No. 27-3, PageID 619).

Petitioner then argues the detectives read him his rights in order to intimidate him: "during this time they move into intimidate Petitioner further by reading him his rights. Knowing that he would likely sign to paint the picture that he was acting voluntary [sic]." Petitioner wants to have it both ways: he claims it is intimidating not to read him his rights on May 4 and May 10, then it becomes intimidating to read him his rights on May 13.

Petitioner claims the totality of circumstances respecting voluntariness should include that "petitioner has been beat up by police officers in the past." (Traverse, ECF No. 41, PageID 3023). But there is no record reference to any testimony to that effect. The trial judge could not possibly take that fact into account without any evidence, and Dawson-Durgan did not testify at the suppression hearing. Dawson-Durgan then discusses evidence about the "Reid Method," but as the First District noted, this was all given at trial and not in the suppression hearing.

Petitioner then spends a number of pages of his Traverse discussing the lack of physical evidence and the weakness of the cell phone testimony involving Ms. Hightower (ECF No. 41, PageID 3025-26). While these are all cogent arguments to make in support of Dawson-Durgan's claim of innocence, they do not support his claim that his will was overborne, in particular with any evidence submitted to show error in denial of the motion to suppress.

In sum, Dawson-Durgan has not presented evidence sufficient to show the First District's

factual findings related to the police interviews are clearly erroneous. That court's application of *Miranda* and its progeny to this case is objectively reasonable. Therefore Dawson-Durgan's First Ground for Relief for Relief is without merit and should be denied.

## Ground Two: Ineffective Assistance of Trial Counsel

Petitioner asserts he received ineffective assistance of trial counsel when his trial attorney did not present "false confession" evidence.

In part Petitioner grounds this claim in the Ohio Constitution. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring). Because this Court cannot grant relief for violations of the Ohio Constitution, no further analysis is offered on that claim.

The governing standard for ineffective assistance of counsel under the federal Constitution is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the

> deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.  Unless a
> defendant makes both showings, it cannot be said that the conviction
> or death sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing

*Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly
> deferential. . . .  A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of counsel's challenged
> conduct, and to evaluate the conduct from counsel's perspective at
> the time.  Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's
> conduct falls within a wide range of reasonable professional
> assistance;  that is, the defendant must overcome the presumption
> that, under the circumstances, the challenged action "might be
> considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to overcome

confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184

(1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing

*Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*,

466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S.

86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Dawson-Durgan claims he received ineffective assistance of trial counsel "[w]hen counsel failed to put on any expert testimony from a defense expert witness as to the officer's methods and techniques of interrogation, and /or a false confession expert." (Traverse, ECF No. 41, PageID 3029-30). Dawson-Durgan claims that an expert on the Reid Method of interrogation would have testified "on how this type of aggressive interrogation that was used generally produces a false confession." *Id.* Petitioner then proceeds to argue the weakness of the State's case and how it depended on portraying the statements he made in the three interviews as lies.

Dawson-Durgan raised this claim of ineffective assistance of trial counsel on direct appeal and the First District decided it as follows:

> {¶ 41} In his fifth assignment of error, Durgan contends that he was denied the effective assistance of counsel. He argues that his counsel was ineffective for failing to present expert testimony on police interrogation techniques and false confessions. This assignment of error is not well taken.

{¶ 42} A court will presume that a properly licensed attorney is competent, and the defendant bears the burden to show ineffective assistance of counsel. *State v. Hamblin*, 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476 (1988); *Hackney*, 1st Dist. Hamilton No. C–150375, 2016–Ohio–4609, at ¶ 36. To sustain a claim for ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hackney* at ¶ 36.

{¶ 43} Generally, the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy. *State v. Coleman*, 45 Ohio St.3d 298, 307–308, 544 N.E.2d 622 (1989); *State v. Tobert*, 1st Dist. Hamilton No. C–010700, 2003–Ohio–675, ¶ 19. Further, Durgan's counsel extensively and thoroughly cross-examined the lead detective about the Reid Method and other interrogation techniques. The detective acknowledged that the Reid Method can lead to false confessions.

{¶ 44} The record shows that Durgan's counsel provided a diligent and thorough defense. Durgan has not demonstrated that counsel's representation fell below an objective standard of reasonableness or that, but for counsel's unprofessional errors, the results of the procedure would have been otherwise. Therefore, he has failed to meet his burden to show ineffective assistance of counsel. *See Strickland* at 687–689; *Hackney* at ¶ 37–38. We overrule Durgan's fifth assignment of error.

*State v. Durgan, supra.*

As the First District held, the decision whether to call an expert witness or to instead rely on cross-examination of opposing witnesses is a question of trial strategy committed to the sound discretion of trial counsel. Dawson-Durgan does not dispute the thoroughness of trial counsel's cross examination, particularly about the Reid Method and its possibility of producing false confessions. Counsel actually obtained an admission to that effect. He has not shown any deficient performance on the part of trial counsel, much less any prejudice.

Alternatively, this Ground for Relief can be seen as procedurally defaulted. Dawson-Durgan's claims about what a false confession expert would testify to are totally speculative – he

does not offer any proposed testimony from such an expert that would have produced the effect he claims. Because there was no evidence on this point in the appellate record, the claim would have had to depend on evidence outside the record, evidence which would have had to be presented in a post-conviction petition under Ohio Revised Code § 2953.21. While Dawson-Durgan filed such a petition, it was filed beyond the expiration of the statute of limitations, which in post-conviction cases is jurisdictional. And he did not include this ineffective assistance of trial counsel claim among those he raised.

The First District's denial of Ground Two is an objectively reasonable application of *Strickland* and is therefore entitled to deference. Ground Two should therefore be dismissed.

**Ground Three: Manifest Weight and Sufficiency of the Evidence**

In his Third Ground for Relief, Dawson-Durgan claims his conviction is against the manifest weight of the evidence and that the evidence is indeed insufficient to support a conviction.

A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). Like the Ohio constitutional ineffective assistance of trial counsel claim in Ground Two, it is not within the jurisdiction of this Court and will not be considered further.

An allegation that a verdict was entered upon insufficient evidence, on the other hand, does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the

crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

The First District Court of Appeals considered this claim on the merits and held:

> {¶ 38} In his third assignment of error, Durgan contends that the evidence was insufficient to support his convictions. Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state proved beyond a reasonable doubt all of the elements of aggravated murder, aggravated robbery, and having weapons while under a disability, along with the accompanying firearm specifications. Therefore, the evidence was sufficient to support the convictions. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Hackney*, 1st Dist. Hamilton No. C–150375, 2016–Ohio–4609, ¶ 29.

> {¶ 39} Durgan argues that no physical evidence linked him to the offenses. But no rule of law exists that a witness's testimony must be corroborated by physical evidence. *Thomas*, 1st Dist. Hamilton No. C–120561, 2013–Ohio–5386, at ¶ 45. He also argues that the state presented no evidence proving that he was the perpetrator. We disagree. The state's evidence was circumstantial, but circumstantial evidence and direct evidence have the same probative value. *Jenks* at paragraph one of the syllabus; *State v. Williams*, 1st Dist. Hamilton No. C–081148, 2010–Ohio–1879, ¶ 14. Consequently, we overrule Durgan's third assignment of error.

21

*State v. Durgan, supra.*

The evidence at trial established that Dawson-Durgan had a motive to harm Singh relating to Singh's unwillingness to provide him more money. Dawson-Durgan had threatened Singh and had attempted to conceal the origins of the threats with the "burner" telephone. There is no doubt that Singh died of a gunshot wound early on May 4, 2016. Dawson-Durgan was identified as being in the vicinity of Singh's residence that morning. Dawson-Durgan had no alibi for the time of the shooting. Dawson-Durgan told repeated inconsistent lies about that morning, including eventually that he was present when the shooting occurred, but that the perpetrator was an unknown, unnamed drug dealer who came to the Singh residence with Dawson-Durgan. While the State presented no eyewitness to the shooting and no physical evidence linking Dawson-Durgan to the shooting, the circumstantial evidence is sufficient for conviction of the murder. Ground Three should therefore be dismissed.

**Ground Four:  Insufficient Evidence of Having a Weapon Under Disability**

In his Fourth Ground for Relief, Dawson-Durgan claims there was insufficient evidence to convict him of having a weapon while under disability. Dawson-Durgan explains his failure to take the stand at trial by the fact of his prior conviction. As Respondent notes, he admitted a prior conviction of robbery. This satisfies the disability element of this offense. In its analysis of Ground Three, the Court has already concluded there was sufficient evidence to prove Dawson-Durgan murdered Singh by shooting him to death. That satisfies the possession of a firearm element of the offense. There is no merit to Dawson-Durgan's Fourth Ground for Relief.

**Ground Five:  Judgment Entry Does Not Correctly Reflect Manner of Conviction**

In his Fifth Ground for Relief, Dawson-Durgan argues the judgment entry of conviction reflects conviction upon guilty pleas, whereas he was convicted by the jury.  There is no constitutional right to have such an error corrected by the state courts, much less a right to be released from prison on the basis of such a mistake.

"A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).  Dawson-Durgan's Fifth Ground for Relief fails to state a claim upon which habeas corpus relief can be granted and it should be dismissed on that basis.

Moreover, the First District enforced against Dawson-Durgan his procedural default in failing to raise this claim on direct appeal (Entry, State Court Record, ECF No. 10, Ex. 21).  Ground Five should be dismissed without prejudice for failure to state a claim upon which habeas corpus relief can be granted.

**Procedural Default of Grounds Six and Seven**

Respondent asserts that both Grounds Six and Seven were procedurally defaulted by Petitioner's failure to timely file a petition for post-conviction relief and failure to pursue these claims through review by the Supreme Court of Ohio (Return, ECF No. 29, PageID 2960-63).

Dawson-Durgan argues the procedural status of Grounds Six and Seven together (Traverse, ECF No. 41, PageID 3046-48).  He first claims that when he learned he could raise these two

grounds for relief, he filed a timely application to reopen his direct appeal under Ohio R. App. P.

26(B) and a timely petition for post-conviction relief under Ohio Revised Code § 2953.21. *Id.* at

PageID 3046.

An application to reopen a direct appeal must be filed within ninety days of the decision

sought to be reopened. The First District entered judgment June 15, 2018 (Opinion, State Court

Record, ECF No. 10, Ex. 14). Therefore the deadline for filing under the Rule was September 13,

2018. Dawson-Durgan filed an Application to Reopen on August 29, 2018, but it did not include

either of these claims. (Application, State Court Record, ECF No. 10, Ex. 18). He filed an

Amendment to the Application on January 2, 2019. *Id.* at Ex. 20; the Amendment included as an

omitted assignment of error what is reiterated as Ground Seven. The First District denied his

Amended Application on the merits on May 7, 2019. *Id.* at Ex. 21.

Dawson-Durgan filed a Petition for Post-Conviction Relief raising both these claims on

December 7, 2018 (Petition, State Court Record, ECF No. 10, Ex. 27). The trial court summarily

denied the Petition on January 15, 2019. *Id.* at Ex. 28. Dawson-Durgan appealed and on March

25, 2020, the First District affirmed "the court's judgment as modified to dismiss the petition for

lack of jurisdiction." (Judgment Entry, State Court Record, ECF No. 27, Ex. 37). The appellate

court reasoned as follows:

> Although R.C. 2953.21 permits a petitioner's collateral attack upon
> a judgment of conviction, here the trial court lacked jurisdiction to
> review Mr. Dawson-Durgan's petition. Pursuant to R.C. 2953.21, a
> petitioner must file the petition no later than 365 days after the trial
> transcript was filed with the court of appeals in the direct appeal.
> See R.C. 2953.21(A)(2). Mr. Dawson-Durgan missed this deadline
> by a couple of months, with the trial transcripts filed on September
> 28, 2017, and his petition filed on December 7, 2018. Because a trial
> court may not entertain an untimely petition, the court lacked
> jurisdiction to review Mr. Dawson-Durgan's petition, unless he
> demonstrated that one of the exceptions in R.C. 2953.23(A) applied.

24

> See *State v. Apanovitch,* 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 38 ("By providing that a court 'may not entertain' an untimely or successive postconviction petition except in limited circumstances, R.C. 2953.23(A) plainly prohibits a court from hearing and deciding on the merits a petition that does not meet one of the exceptions."). He failed to establish either exception under R.C. 2953.23(A) existed here. Consequently, the trial court lacked jurisdiction to entertain either of Mr. Dawson-Durgan's claims asserted in his petition.

*Id.* at PageID 408. Dawson-Durgan argues the First District made this decision "without considering his pleadings that outlined he fit the exception of the statue [sic]." (Traverse, ECF No. 41, PageID 3047.)

The First District entered judgment just as the country and most of the world was going into lockdown to attempt to prevent the spread of the COVID-19 virus. There was emergency legislation at both the national and state levels and orders from the Supreme Court of Ohio tolling filing deadlines. As explained in the Motion to Dismiss Durgan's Petition for Writ of Mandamus, Dawson-Durgan's time to appeal expired May 11, 2020, forty-five days after the First District's judgment, but was extended by the Ohio Supreme Court's tolling orders (Motion, State Court Record, ECF No. 27, PageID 474). Dawson-Durgan did not comply with the Supreme Court's tolling orders, but alleges he was misled by verbal advice from the Supreme Court Clerk's Office. Eventually the Supreme Court of Ohio denied Dawson-Durgan's request for mandamus "upon consideration of the respondent's motion to dismiss." (Entry, State Court Record, ECF No. 27, PageID 486).

Assuming Dawson-Durgan was entitled to the full benefit of the Supreme Court's tolling orders, his time to appeal would have begun to run July 30, 2020, and expired September 13, 2020. Dawson-Durgan did not file his notice of appeal to the Supreme Court

by that date. The Rules of Practice of the Supreme Court prohibit motions for delayed appeal in post-conviction cases, entirely apart from any pandemic-related concerns. S.Ct.Prac.R. 7.01(A)(4)(a).

Deputy clerks of the Supreme Court of Ohio are not authorized to vary or grant exceptions to rules that court adopts. As the Supreme Court's denial of mandamus confirms, any motion for leave to file a delayed appeal to that court from denial of the post-conviction petition is a nullity.

Petitioner asks this Court to excuse his default in failing to appeal to the Supreme Court of Ohio because it was "due to his inability to timely raise the claims in the State Supreme court, were [sic] the reasons were the results of COVID 19, and ODRC's mandatory lockdown, finding no fault of his own." (Traverse, ECF No. 41, PageID 3048).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*,

456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley,* 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry,* 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio clearly has two relevant procedural rules: an appeal to the Supreme Court of Ohio must be filed within forty-five days of judgment in the district court of appeal and delayed appeals are not allowed in post-conviction cases. Both of these rules were enforced against Dawson-

27

Durgan in this case. The time limit on appeals has been recognized as an adequate and independent state rule of procedure. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004)(citations omitted). Lack of counsel at that stage, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse this default. *Bonilla*, *citing Murray v. Carrier,* 477 U.S. 478, 494-95 (1986).

The Court would be prepared to recognize COVID-related difficulties as excusing some delay and has done so throughout the pandemic, routinely granting extensions of time to account for library lockdowns. But preparing and mailing a notice of appeal is a very simple matter, requiring no legal research and here the Petitioner had already done the research necessary to file a memorandum in support of jurisdiction. The Magistrate Judge concludes Dawson-Durgan has not shown sufficient cause to excuse his delay in appealing to the Supreme Court of Ohio.

Even were the Court to set aside Dawson-Durgan's default in his Supreme Court of Ohio appeal, it would still be confronted with his procedural default in filing his Post-Conviction Petition in the first place. As the First District found, the trial transcripts were filed in that court September 28, 2017, and his post-conviction petition was not filed until December 7, 2018, 435 days later and seventy days beyond the statute of limitations.

Dawson-Durgan claims he comes within an exception to the limitations period as pleaded in his petition (Traverse, ECF No. 41, PageID 3046). He does not identify where that exception is pleaded, but the Magistrate Judge notes that he claims "In late October of 2018 the defendant for the first time received personally a copy of his transcripts." (Petition, State Court Record, ECF No. 10, Ex. 27, PageID 269.) In the attached Affidavit he confirms receipt of the trial transcripts from his trial attorney in late October 2018. *Id.* at PageID 278.

Ohio Revised Code § 2953.23(A) provides

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

The Magistrate Judge assumes Petitioner is relying on his claim of first receiving the transcripts in late October 2018 as supporting the exception that he was unavoidably prevented from discovery of the facts on which Grounds Six and Seven are based. That claim is completely untenable. Petitioner was himself personally present when, as he says, a juror reacted negatively to him while he was handcuffed during the trial. He saw what happened. Indeed he relies on his own observations to support his claim his attorney provided ineffective assistance of trial counsel when he waived Dawson-Durgan's presence at a hearing on the matter. He also claims his attorney told him there would be a hearing at which he would be present. He certainly knew by the time the trial was over that he had not been present at any such hearing. Thus Dawson-Durgan has not shown he was unavoidably prevented from learning the relevant facts. Nor has he shown or even

argued the second part of the exception, to wit, that no reasonable factfinder would have found him guilty but for these two asserted constitutional violations.  And the conclusion above that his convictions were supported by sufficient evidence forecloses an argument about the second prong of the exception.

Because Dawson-Durgan has not shown he qualified for an exception to the one-year statute of limitations or that he was entitled to appeal late to the Supreme Court of Ohio, he has procedurally defaulted his Sixth and Seventh Grounds for Relief which should therefore be dismissed on that basis.  Because of that conclusion, no discussion of the merits of Grounds Six and Seven is warranted.


**Conclusion**


Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice, except as to Ground Five which should be dismissed without prejudice to any later claim in the Ohio courts.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.


February 22, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.