# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DONALD DAWSON-DURGAN, :

          Petitioner,                      Case No. 1:19-cv-382

   - vs -                                 District Judge Matthew W. McFarland
                                         Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution,

          Respondent. :

## SUPPLEMENTAL REPORT AND RECOMMENDATION

      This habeas corpus case, brought *pro se* by Petitioner Donald Dawson-Durgan under 28 U.S.C. §2254, is before the Court on Petitioner's Objections (ECF No. 48) to the Report and Recommendation (the "Report," ECF No. 45), recommending the Petition be dismissed. District Judge McFarland has recommitted the case for reconsideration in light of the Objections (ECF No. 49).

      Petitioner seeks relief from his conviction in the Court of Common Pleas of Hamilton County on charges of aggravated murder, aggravated robbery, and having weapons while under disability. Dawson-Durgan was sentenced to life imprisonment and has pleaded seven grounds for relief as follows:

> **Ground One**: The court erred when it overruled the defense's motion to suppress defendant's statements.
>
> **Supporting Facts**: Defendant's constitutional rights were violated when during custodial interrogation by police when his rights were not appraised [sic] by those officers in accordance with his constitutional protections.

1

**Ground Two**: The defendant was denied effective assistance of trial counsel as guaranteed by Section 10, Article I of the Ohio Constitution and the 6th and 14th Amendments.

**Supporting Facts:** Counsel failed to present false confession evidence when it was crucial to the defense's theory.

**Ground Three**: The trial court erred to the prejudice of the defendant as there was insufficient evidence to convict. And the verdict was against the manifest weight of the evidence.

**Supporting Facts:** Evidence showed defendant did not commit the offenses and his convictions were not supported by the weight of the evidence.

**Ground Four**: There was insufficient evidence to sustain a conviction for weapons under disability.

**Supporting Facts:** No evidence was presented the defendant possessed or had under his control a firearm.

**Ground Five**: The judgment entry does not reflect the proper manner of conviction related to any of the courts.

**Supporting Facts:** The entry of judgment does not comport to the record.

**Ground Six**: The defendant Donald Dawson Durgan's rights to due process of law and an impartial jury, as well as a fair trial pursuant to the 6th and 14th Amendments were violated because he was seen multiple times by the jury in handcuffs and being transported in the company of deputy sheriffs.

**Supporting Facts:** The defendant was prejudiced by being witnessed by jury member who reacted negatively to seeing him handcuffed.

**Ground Seven**: Defendant's counsel was ineffective for waiving his presence during a critical stage of the proceedings causing a manifest miscarriage of justice and violating his right to trial. [sic].

(Petition, ECF No. 1, Page ID 6-17).

The Report recommending dismissing all grounds for relief with prejudice except for Ground Five.  That Ground could not be litigated here because it raises only a question of state

law. Because it may still be a viable ground for relief in the Ohio courts, the Report recommended it be dismissed without prejudice (ECF No. 45, PageID 3097).

Petitioner objects to the proposed disposition of Grounds One, Two, Three, Six, and Seven. The Objections do not mention Ground Four and Dawson-Durgan agrees with the proposed disposition of Ground Five (ECF No. 48, PageID 3038).

**Ground One: Denial of Motion to Suppress**

In his First Ground for Relief, Dawson-Durgan asserts his Fifth Amendment rights were violated when his statements to the police were used against him in evidence. The Report noted that this claim had been presented to the First District Court of Appeals on direct appeal and denied by that court on the merits. *State v. Durgan*, 2018-Ohio-2310, ¶¶ 12-28 (Ohio App. 1st Dist. Jun. 15, 2018). The Report concluded the First District's decision on this claim was neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent and was therefore entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(Report, ECF No. 45, PageID 3090).

Dawson-Durgan's objections to that conclusion occupy twenty pages of his Objections (ECF No. 48, PageID 3110-29) and require detailed comment.

Petitioner recognizes that state court findings of fact are entitled to deference unless overcome by clear and convincing evidence from the state court proceedings (Objections, ECF No. 48, PageID 3110, citing 28 U.S.C. § 2254(e) and *Cullen v. Pinholster*, 563 U.S. 170 (2011)). That is the correct standard and the one which will be employed here.

Dawson-Durgan was interviewed by police three times and challenges the admissibility of

3

his statements from all three interviews.

**May 4, 2016, Interview**

Anant Singh was found by his spouse shot to death on the floor of his garage on the morning of May 4, 2016. Without being called by Ms. Singh, Dawson-Durgan had arrived at the crime scene before the police. That made his truck part of the crime scene and it could not be moved until it had been forensically processed.

The police desired to obtain statements from both Dawson-Durgan and Ms. Singh and needed them transported to a police station for purposes of obtaining that statement. Ms. Singh was offered and accepted a ride from a neighbor; Dawson-Durgan rode in an unmarked police vehicle, the only restraint being a legally-required seat belt.

The State admits Dawson-Durgan was not given *Miranda* warnings on this occasion, but asserts they were not required because he was not in custody. Dawson-Durgan concedes in his Objections that the only difference between his account of these events and that of the Court of Appeals is that he claims he was treated as a suspect because he was locked into the police vehicle (Objections, ECF No. 48, PageID 3111). The Report noted that there was no record reference to this supposed fact because Dawson-Durgan did not testify at the suppression hearing. Indeed there was no testimony to contradict Detective Pfaffl's account that Dawson-Durgan was treated as a witness, just as Ms. Singh was treated, and in particular that he was not locked in.

In his Objections, Dawson-Durgan recites a long list of alleged facts to show he was a suspect in custody at the time of the May 4 interview:

> 1. Police patted him down prior to having him have placed in their vehicle.

4

2. Placed him in the back of a locked police vehicle and instructed him to write out a statement. Stated by witness Deputy Rechtin (T. Tr.pg. 407 lines 14- 19 Respondent's PAGEID 917.) Pfaffl admitted that he also witnessed Petitioner writing the statement which he would have been in the back of a cruiser. (T. Tr.pg. 971 lines 5-10 Respondent's PAGEID1 481)

3. Petitioner was held in the back seat of a police cruiser for hours while no one else was held in a police cruiser at all.

4. Police transported him to headquarters without asking him if he would mind coming down or not nor asking would he agree to come at a later time. Stated by witness Deputy Rechtin (T. Tr.pg. 408 lines 1-7 Respondent's PAGEID 918.) and Pfaffl (T.Tr.pg. 972 lines 14-25 pg. 973 lines 1-23 Respondent's PAGEID 1482-83.)

5. Petitioner was separated from Mrs. Singh, stated by witness Deputy Pfaffl (T. Tr.pg. 973 lines 9- 14 Respondent's PAGEID 1483.) "We obviously wanted to keep them separated".

6. Police escorted him into the building. While other witnesses were permitted to just write out a statement at the scene including a witness that arrived when Petitioner did.  Stated by witness Mr. Bell "+++ And he and I got to the garage exactly the same time." (T. Tr.pg. 528 lines 24-25 Respondent's PAGEID 1038.) "1 believe I just did the one written statement. (T. Tr.pg. 530 lines 8-9 Respondent's PAGEID 1040.)

7. While at headquarters Petitioner was induced by police to be tested for Gun Shot Residue known as "GSR' to prove to the police he was not the shooter or involved.  Testified by Deputy Pfaffl (T. Tr.pg. 976 lines 15-25 Respondent's PAGEID 1486.)

8. Police seized Petitioner's truck state by witness Deputy Pfaff1 (T. Tr.pg. 972 lines 4-8 Respondent's PAGEID 1482.) for more than the reason of it being parked in the area of a crime scene as it was processed both inside and out. Even though the police were informed by witnesses he arrived after Mr. Singh had been killed. His vehicle still was tested for GSR without a warrant or explanation.

9. The other witness that arrived when Petitioner arrived or after were not tested for GSR nor asked to be tested by police.

> 10. The other witnesses even believed he was in custody based on the manner in which he was placed in the police cruiser. Stated by witness Cindy Bell "I saw a man being escorted into the police car by the police." (T. Tr.pg. 492 lines 24-25 Respondent's PAGEID 1002.)
>
> 11. Petitioner was the only person who was locked in a police cruiser where no one else was even sat in a cruiser, who also happened to be the only African American person there while others were permitted to walk around or stand. Cindy Bell (T. Tr.pg. 505 lines 8-16 Respondent's PAGEID 1015.)
>
> 12. Petitioner was not free to just leave as he was transported to the police department by police and was not going to be permitted to leave unless they took him.
>
> 13. Petitioner was not free to leave the interrogation room as the door was locked from the outside and blocked by officer's [sic].

(ECF No. 48, PageID 3111-13).

Several points must be observed about this list.

First, many of the alleged facts have no record reference at all to supporting testimony.

Second, and much more important, the record references given are all to **trial** testimony, not **motion to suppress** testimony. As the Court of Appeals noted, Dawson-Durgan's assignment of error was denial of his motion to suppress. On that issue it could only consider testimony given on the motion to suppress; indeed that was the only testimony before the trial judge when he decided the motion. The First District held that on the suppression question it was limited to evidence at the suppression hearing. *Dawson-Durgan, supra,* at ¶ 26, citing *State v. Tapke,* 2007-Ohio-5124 (1st Dist. 2007)(¶ 47. "Although both parties have argued about evidence that was presented at trial, we may only consider and review the evidence that was presented at the suppression hearing.")

Third, Dawson-Durgan does not account for weighing of competing testimony by the First District. That is, he cites only trial testimony that supports the factual findings he believes should

6

have been made, but if there was competing testimony on any point, the First District's finding must be accepted unless he shows it was erroneous by clear and convincing evidence. For example, the First District found:

> {¶ 4} When police arrived at the scene of the murder, Durgan appeared eager to help. He told them that he had become concerned when Singh had not appeared for a planned business meeting early that morning. He also told them that Singh had been receiving threatening messages recently, and that they should check Singh's cell phone. Because Durgan's truck was part of the crime scene, the police took Durgan to the police station to be interviewed. He discussed various tenants he believed had reason to threaten Singh and allowed the police to download information from his phone.

*Durgan, supra.* Durgan claims instead that he told the police he knew nothing about the murder. But the First District was entitled to weigh that statement at trial against other evidence supporting what he actually did say.

Dawson-Durgan points out that the question of whether a person is in custody for *Miranda* purposes is a mixed question of law and fact (Objections, ECF No. 48, PageID 3114, citing *Thompson v. Keohane*, 516 U.S. 99 (1995)(pre-AEDPA) and *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998)(post-AEDPA)). But when the relevant questions of fact must be resolved on competing testimony, post-AEDPA the resolution of that question by the state courts is entitled to deference unless there is clear and convincing evidence to the contrary in the relevant state court record, here the testimony at the motion to suppress hearing.

**May 10, 2016, Interview**

Petitioner was interviewed again by police on May 10, 2016. Here the State also admits no *Miranda* warning was given, but asserts Dawson-Durgan was not in custody. The Report

7

upheld the finding of the First District that Petitioner was not in custody for this interview, indeed there were less indicia of custody than for the May 4, 2016 (ECF No. 48, PageID 3087). Petitioner's claim that the surreptitious placing of a GPS device was coercive was rejected because he did not know of its placement. *Id.*

In objecting to the Report's conclusion that there was no obligation to give *Miranda* warnings on this occasion, Dawson-Durgan opines the Court could apply either the standard from *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (what a defendant felt, if he felt he was free to stop the interrogation or leave) or the standard from ALI [American Law Institute], Model Code of Pre-Arraignment Procedure § 110.1 (2) (Approved Draft 1975)(was the person "actually" able to stop the interrogation and leave) (suspects interrogated at police station must be advised of their right to leave and right to consult with counsel, relatives, or friends).  Although the American Law Institute is a respected source of suggested law, this Court can grant habeas relief only if the state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent.  28 U.S.C. § 2244(d). Thus we must apply *Mathiason* and there is no testimony in the Motion to Suppress transcript that Dawson-Durgan did not feel free to leave.

**May 13, 2016, Interview**

At the time of the May 13, 2016, interview, the State concedes Dawson-Durgan was in custody, but he was given the required *Miranda* warnings.  Petitioner concedes the warnings were given, but nevertheless argues his statements were not voluntary, but rather coerced.  The First District found the *Miranda* warnings were given and Dawson-Durgan signed the Advice of Rights form, waiving those rights (Report, ECF No. 45, PageID 3088).  Applying a totality of the

8

circumstances test, the First District concluded Dawson-Durgan's post-*Miranda* warning statements were voluntary. The Report concluded Petitioner had not overcome the presumption of correctness in that conclusion by clear and convincing evidence (Report, ECF No. 45, PageID 3089-90).

Petitioner objects that this is one of those rare cases in which his statements should have been suppressed because of post-*Miranda* warning coercion (Objections, ECF No. 48, PageID 3119, et seq.). Principally he relies on testimony during trial about the use of the so-called Reid Method to coerce a confession by mental pressure. He argues

> The First Appellate District and the M.J. take discussion with Petitioner pointing out the facts about the Reid Method being used to coerce his false confession, respectfully Petitioner concedes that the trial court could not have seen into the future to uncover that his statements were the result of police coercion until it was addressed during trial. Yet, after this fact became apparent by the court, the First Appellate District should have reversed the case based off of the constitutional violations by Officers in securing a confession by coercion then using it in trial against him.

(Objections, ECF No. 48, PageID 3120-21).

The Magistrate Judge certainly concurs with the proposition that a valid *Miranda* waiver does not preclude a claim about post-*Miranda* coercion. The police obviously cannot obtain a *Miranda* waiver by gentlemanly requests, then proceed to beat a confession out of a suspect. The difficulty lies in relying on post-suppression hearing testimony to prove the coercion. Ohio law, like federal law in this respect, requires efforts to suppress evidence on the ground it was obtained in violation of the Constitution are required to be brought by a motion to suppress. Ohio R. Crim. P. 12(C). Such motions must be filed not later than thirty-five days after arraignment or seven days before trial, whichever is earlier. Ohio R. Crim. P. 12(D).

The purpose of requiring suppression motions to be heard before trial is obvious: if the

9

hearing occurs in front of the jury, it will be very hard to make an effective ruling excluding the evidence because the jury will already have heard it.

When a habeas petitioner is required by state procedural law to present a claim in a particular way and he or she does not do so, the petitioner can be found to have procedurally defaulted the claim. The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for

10

> presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

11

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a relevant procedural rule: challenges to the admissibility of evidence on grounds it was unconstitutionally obtained must be brought in a pretrial motion to suppress within the time limits provided in Ohio R. Crim. P. 12. That rule was enforced against Dawson-Durgan in this case when the Court of Appeals refused to consider evidence of coercion of admissions which was presented at trial but not at the motion to suppress hearing. The rule is adequate in that there is a good reason, noted above, for requiring these questions to be litigated pre-trial and out of the hearing of the jury. The rule is "independent" in the sense that any evidence in support of suppression must be given pre-trial, not just evidence relating to suppressibility on federal grounds. Finally, Dawson-Durgan has offered no excusing cause to explain why the coercion evidence presented at trial could not have been presented at the motion to suppress hearing.

The Magistrate Judge therefore concludes that Dawson-Durgan's claim that his post-*Miranda* warning statements were coerced is procedurally defaulted because evidence to that effect, principally of use of the "Reid Method," was not presented at the motion to suppress hearing. Petitioner's First Ground for Relief should therefore be dismissed.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Dawson-Durgan claims he received ineffective assistance of trial counsel when his attorney did not present evidence on the phenomenon of false confessions, specifically "[w]hen counsel failed to put on any expert testimony from a defense expert witness as to the officer's methods and techniques of interrogation, and /or a false confession expert."

12

(Traverse, ECF No. 41, PageID 3029-30).

The Report rejected this Ground for Relief, noting that the First District had applied the correct federal standard enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984), and found the decision on whether to call an expert was within the sound discretion of the trial attorney, who had thoroughly cross-examined State witnesses on the Reid Method. (ECF No. 45, PageID 3090-93). Alternatively the ground for relief was procedurally defaulted because Dawson-Durgan's claim about what an expert would have testified to was speculative – the substance of the omitted testimony was never presented in a petition for post-conviction relief. *Id.* at PageID 3093-94.

Dawson-Durgan's Objections do not speak to trial counsel's discretion point and essentially say the false confession claim speaks for itself. Petitioner cites some case law in which appellate courts have found failure to call an expert was ineffective assistance, but none in which a false confession expert was the subject of the claim.

Dawson-Durgan has failed to show the First District's decision on this claim is an unreasonable application of *Strickland*; it is therefore entitled to deference. The Magistrate Judge remains persuaded Dawson-Durgan has shown neither deficient performance nor prejudice from failure to call an expert witness on false confessions.

**Ground Three: Insufficient Evidence to Convict of Murder**

In his Third Ground for Relief, Dawson-Durgan claims he was convicted on insufficient evidence, citing the correct federal standard from *Jackson v. Virginia*, 443 U.S. 307 (1979). Dawson-Durgan's claim on direct appeal was that there was no direct evidence (i.e. eyewitness testimony identifying him as the shooter) and no physical evidence linking him to the crime. The

First District overruled this claim, holding that circumstantial evidence was sufficient. *Dawson-Durgan, supra*, ¶¶ 38-39. The Report concluded this was not an unreasonable application of *Jackson* and recommended its dismissal. (ECF No. 45, PageID 3096).

Petitioner objects that the summary of the evidence provided by the First District is inappropriate:

> Regarding this claim when the First District Court of Appeals ruled on the merits, it did not go into any of the evidence. More importantly the appeals court used the State's "statement of the facts" not a summary of both or its own summary which prejudice the Petitioner during the consideration of his appeal by the narrow review. As the court of appeals did not consider Petitioner's evidence, or points toward the evidence addressed in his brief.

(Objections, ECF No. 48, PageID 3132).

In order to be entitled to deference under 28 U.S.C. § 2244(d)(2), a state court opinion need not summarize the evidence at all. A state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S.C. § 2254(d)(1) even if the state court does not explicitly refer to the federal claim or to relevant federal case law. In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *See Chadwick v. Janecka*, 312 F.3d 597, 605-606 (CA3 2002); *Wright v. Secretary for Dept. of Corrections*, 278 F.3d 1245, 1253-1254 (CA11 2002); *Sellan v. Kuhlman*, 261 F.3d 303, 311-312 (CA2 2001); *Bell v. Jarvis*, 236 F.3d 149, 158-162 (CA4 2000) (en banc); *Harris v. Stovall,* 212 F.3d 940, 943, n. 1 (CA6 2000); *Aycox v. Lytle,* 196 F.3d 1174, 1177-1178 (CA10 1999); *James v. Bowersox*, 187 F.3d 866, 869 (CA8 1999). And as this Court has observed, a state court

14

> need not cite or even be aware of our cases under § 2254(d). *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

*Id.* at 98. "This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decisions can be deemed to have been 'adjudicated on the merits.'" *Id.* at 100. The First District plainly decided Dawson-Durgan's insufficient evidence claim on the merits.

Dawson-Durgan argues that the absence of direct eyewitness testimony and physical evidence is "a main reason why this court should grant the writ in this case." (Objections, ECF No. 48 PageID 3134). This argument is inconsistent with the accepted legal proposition that direct evidence and circumstantial evidence are of equal probative value per se. Of course particular kinds of direct evidence and particular kinds of circumstantial evidence may have different weight. Cross-racial eyewitness identification in stranger rape cases, for example, is particularly problematic. See BRANDON L. GARRETT, CONVICTING THE INNOCENT: WHERE CRIMINAL PROSECUTIONS GO WRONG (2012). On the other hand, DNA evidence is completely circumstantial but understood to be so reliable that it is the principal tool of exoneration of the falsely accused, including in Brandon's study.

The circumstantial evidence produced here includes Dawson-Durgan's presence at the crime scene before the police arrived, his involvement with the burner phones used to send the victim threats, his prior acquaintance with the victim, and his inconsistent statements about the murder, eventually leading to his admission of being present when Singh was shot, but inability to

15

identify the drug dealer who he alleges did the shooting. When a person tells a number of inconsistent lies about a situation to which he admits be was a witness, that fact lends credence to disbelieving his denial of further involvement.

When considering all the evidence, most of it circumstantial, the Magistrate Judge cannot say the First District's finding of guilt was an unreasonable determination of fact. The determinative question, again, is not the weight, but rather the sufficiency of the evidence.

**Ground Four: Insufficient Evidence of Having Weapons under Disability**

Dawson-Durgan also claims there was insufficient evidence to convict him of having a weapon while under disability. It is uncontested that Dawson-Durgan had been previously convicted of a felon and therefore was legal prohibited from having a firearm (ECF No. 48 PageID 3137). Petitioner claims there was insufficient evidence he possessed a firearm at the time of the murder.

Petitioner did not raise this claim on direct appeal, but only in his Application to Reopen his direct appeal under Ohio R. App. P. 26(B). See State Court Record (ECF No. 10, Ex. 18). An omitted claim on direct appeal cannot be raised directly under Rule 26 (B), but only if the appellate court finds it was ineffective assistance of appellate counsel to omit it. An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). However, the Report considered this claim on the merits rather than under a procedural default standard.

The Report concluded the claim was without merit because the disability was admitted, the

fact of death by gunshot was uncontested, and the trial judge could infer from the jury's conclusion that Dawson-Durgan was the shooter to the obvious inference that he possessed a firearm (Report, ECF No. 45, PageID 3096). Petitioner objects that this is all circumstantial evidence (Objections, ECF No. 48, PageID 3137-38). But, as shown above, circumstantial evidence has the same probative value as direct evidence. Ground Four should be dismissed with prejudice.

**Ground Five: Incorrect Form of Judgment of Conviction**

The Report recommended Ground Five should be dismissed without prejudice to allow Petitioner to pursue any available state court remedies. Neither party has objected.

**Procedural Default of Grounds Six and Seven**

The Report concluded Petitioner was barred from a merits ruling on his Sixth and Seventh Grounds for Relief by his procedural defaults in presenting those claims to the Ohio courts (Report, ECF No. 45, PageID 3097-3104).

Regarding the default of Ground Six, Petitioner claims he fits within one of the exceptions for late filing in Ohio Revised Code § 2953.23. But that is a question of Ohio law on which this Court is bound by the state court's conclusion to the contrary. Regarding Ground Seven, Petitioner essentially says the Warden's counsel should know the difficulties around filing during the pandemic lockdowns and therefore should not opposed merits consideration. This argument is completely opaque and cannot persuade this Court to ignore the Ohio law.

17

**Conclusion**

Having reviewed the case in light of Petitioner's Objections, the Magistrate Judge again respectfully recommends the Petition should be dismiss with prejudice except that Ground Five should be dismissed without prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 10, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #